FILED
CLERK

**10/1/2025**

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X

KIMBA INDUSTRIES INC.,

                   *Plaintiff,*

           -against-

FORTEGRA SPECIALTY INSURANCE
COMPANY,

                   *Defendant.*
----------------------------------------------------------X

                 **OPINION**
                 <u>**AND ORDER**</u>

        24-cv-01334 (JMW)

**A P P E A R A N C E S :**

        Stephen Wagner
        David Rybak
        **Cohen, Tauber, Spievack & Wagner, P.C.**
        420 Lexington Avenue, Suite 2400
        New York, NY 10170
        *Attorneys for Plaintiff*

        Louis G. Adolfsen
        **Melito & Adolfsen P.C.**
        233 Broadway, 28th Floor
        New York, NY 10279
        *Attorney for Defendant*

**WICKS**, Magistrate Judge:

      Plaintiff Kimba Industries Inc. ("Kimba" or "Plaintiff"), a general contractor and

construction company, commenced this action against Defendant Fortegra Insurance Company

("Defendant" or "Fortegra") on February 22, 2024 for Fortegra's failure to provide coverage for

claims in a separate lawsuit filed in New York State Supreme Court, Queens County ("Queens

Action"). (*See generally* ECF No. 1.) These claims, according to Plaintiff, were purportedly

covered by the commercial general liability policy ("CGL Policy") Fortegra issued to Kimba on

August 1, 2022 providing, in relevant part, that Fortegra "will pay those sums that the insured

becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages." (*See id.*)

The parties are before the Court on cross-motions for summary judgment on the Complaint, namely: (i) Fortegra's motion for summary judgment claiming that it had no duty to defend or indemnify based on the Designated Subcontractor or Independent Contractor Warranty Endorsement in the CGL Policy (*see* ECF No. 41), and (ii) Kimba's motion for summary judgment on Fortegra's alleged breach of contract by failing to provide a defense to Kimba in the Queens Action and a declaratory judgment that Fortegra has a duty to defend and indemnify. (*See* ECF No. 42). For the reasons that follow, Fortegra's motion for summary judgment (ECF No. 41) is **DENIED** in its entirety and Kimba's motion for summary judgment (ECF No. 42) is **GRANTED**.

## FACTUAL BACKGROUND

The following facts are gleaned from the parties' Local Rule 56.1(a) Statements and are uncontested unless otherwise noted.[1]

---

[1] The facts set forth above are taken from the parties' respective Rule 56.1 Statements and corresponding responses. *See* ECF Nos. 23-1 (Kimba's 56.1 statement) and 34 (Fortegra's response); *see also* ECF No. 33 (Fortegra's 56.1 statement) and 40 (Kimba's response). Unless otherwise noted, a standalone citation to a party's Rule 56.1 statement means that the Court has deemed the underlying factual allegation undisputed. Any citation to a Rule 56.1 statement incorporates by reference the documents cited in it. Where relevant, however, the Court may also cite directly to an underlying document. The Court has deemed true undisputed facts averred in a party's Rule 56.1 statement to which the opposing party cites no admissible evidence in rebuttal. *See Stewart v. Fashion Inst. of Tech.,* No. 18-CV-12297 (LJL), 2020 WL 6712267, at *8 (S.D.N.Y. Nov. 16, 2020) ("'[P]ursuant to Local Civil Rule 56.1 [the movant's] statements are deemed to be admitted where [the non-moving party] has failed to specifically controvert them with citations to the record.'") (quoting *Knight v. N.Y.C. Hous. Auth.*, No. 03-CV-2746 (DAB), 2007 WL 313435, at *1 (S.D.N.Y. Feb. 2, 2007)); *Lumbermens Mut. Cas. Co. v. Dinow*, No. 06-CV-3881 (TCP), 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 28, 2012) ("Local Rule 56.1 requires . . . that disputed facts be *specifically* controverted by admissible evidence. Mere denial

A. *The Parties and the CGL Policy*

Kimba is a New York corporation that serves as a general contractor and construction company. (ECF No. 34 at ¶¶ 1-2; ECF No. 40 at ¶ 3.) Fortegra is an Arizona insurance company that issues surplus lines policies of insurance to New York insureds with a principal office located in Jacksonville, Florida. (ECF No. 34 at ¶ 3; ECF No. 40 at ¶ 1.) On August 1, 2022, Fortegra issued to Kimba the CGL Policy (Policy No. FKEl000003-01) for the period August 1, 2022, to August 1, 2023, with limits of $1 million per occurrence. (ECF No. 34 at ¶ 4; ECF No. 40 at ¶ 2.)

The Policy provides that, *inter alia*, Fortegra "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages." (ECF No. 34-1 at ¶ 5) (citing ECF No. 23-2, CGL Policy, Section 1, Coverage A (1)(a)). The Policy continues that Fortegra would have "no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." (ECF No. 40 at ¶ 8) (citing ECF No. 23-2, CGL Policy, Section 1, Coverage A (1)(a).

Moreover, the CGL Policy contains an endorsement entitled "Designated Subcontractor or Independent Contractor Warranty" providing that:

> For any subcontractor or independent contractor not specified in the SCHEDULE above, the insured must comply with the conditions listed below:

---

of an opposing party's statement or denial by general reference to an exhibit or affidavit does not specifically controvert anything."). "Additionally, to the extent [a party's] 56.1 statement 'improperly interjects arguments and/or immaterial facts in response to facts asserted by [the opposing party] without specifically controverting those facts,' the Court has disregarded [such] statement[s.]" *McFarlane v. Harry's Nurses Registry*, No. 17-CV-06350 (PKC) (PK), 2020 WL 1643781, at *1 n.1 (E.D.N.Y. Apr. 2, 2020).

(1) You must obtain Certificates of Insurance from all subcontractors or independent contractors, prior to commencement of any work performed on your behalf by that contractor, evidencing:

    a. That the subcontractor or independent contractor is the Named Insured on a Commercial General Liability policy which has limits of insurance which are equal to or greater than:
        i. Each Occurrence Limit $2,000,000
        ii. General Aggregate Limit $2,000,000
        iii. Products/Completed Operations Aggregate Limit $2,000,000

    b. Workers Compensation insurance in compliance with the statutes of the applicable state and Employers Liability Insurance

    c. That the insurance is provided by a carrier(s) holding an A.M. Best rating of A- VII or better

    d. That the insurance remains in full force without lapse in coverage from the date on which the contract for work being performed is executed until the date on which it is completed.

(2) You must:
    a. Obtain written hold harmless agreements which are signed and executed from subcontractors or independent contractors, prior to commencement of any work performed on your behalf by that contractor, which indemnifies you against all losses, including expenses and legal fees, for the work performed for you by any and all subcontractors or independent contractors

    b. Be added as an Additional Insured on all General Liability policies issued to all subcontractors or independent contractors and a copy of the endorsement must be received by you prior to the commencement of any work performed on your behalf by that contractor

(3) You must confirm the following applies to the coverage held by the subcontractor or independent contractor:
    a. Coverage includes "bodily injury" and "property damage" arising out of work being contracted for by you;
    b. Coverage does not exclude any claim, "suit", loss, cost, or expense arising out of any "bodily injury" to any person hired by that subcontractor or independent contractor; and
    c. Does not contain any conditions or provisions that preclude coverage based on requirements for hiring or contracting with subcontractors or independent contractors

> If at the time of an "occurrence" involving a subcontractor or independent contractor, any of the above conditions are not met with respect to such subcontractor or independent contractor, we will have no duty to defend or indemnify any insured for "bodily injury", "property damage" and "personal and advertising injury" arising out of any covered acts of such subcontractor or independent contractor working for you or on your behalf.

(ECF No. 33 at ¶ 9) (citing ECF No. 23-2, CGL Policy, Section IV).

Though Fortegra states in its declination letter that the "SCHEDULE" refers to "[a]ll work or activities performed *outside* the State of New York," (ECF No. 33 at ¶ 9) (emphasis added), the CGL Policy itself says otherwise. That is, the Policy explicitly provides that the "**SCHEDULE**" is comprised of "[a]ll work or activities performed *in* the State of New York." (ECF No. 23-2, CGL Policy, Section IV, p. 1) (emphasis added).

B. *The Underlying Queens Action*

On July 11, 2023, Segundo Cevallos ("Cevallos"), a worker employed by Muentes Flooring Inc. ("Muentes"), a subcontractor retained by Kimba, commenced the Queens Action against Kimba and non-party 393 Jericho Turnpike LLC ("393 Jericho"). (ECF No. 34 at ¶¶ 6, 10.) In the Queens Action, Cevallos alleged that 393 Jericho owned, operated, maintained, controlled, and managed the building located at 393 Jericho Turnpike, Mineola, New York, and leased a suite to Kimba. (*Id.* at ¶ 7.) Cevallos further alleged that Kimba and its agents were engaged to perform construction work, labor, and services within the building and Kimba leased, operated, controlled, managed, maintained, and repaired the premises. (*Id.* at ¶ 8; *see also* ECF No. 23-3, Queens Action Complaint at ¶¶ 16-22.) Additionally, Kimba had a duty to maintain the premises in a reasonably safe condition. (*See* ECF No. 34 at ¶ 9; *see also* ECF No. 23-3, Queens Action Complaint at ¶ 23.)

On November 14, 2022, Cevallos injured his hand working on the premises at 393 Jericho (*see* ECF No. 23-3, Queens Action Complaint at ¶ 32) while operating a drill. (*See* ECF

No. 40 at ¶ 5.) A November 10, 2022 invoice describes the tasks to be performed by Muentes for Kimba, which was solely the installation of flooring. (ECF No. 40 at ¶ 6) (referencing ECF No. 33-3.) Though Fortegra denies the asserted causation of the accident, the Queens Action Complaint alleged that Cevallos was injured because Kimba failed to discharge its non-delegable duty to maintain a safe workplace that was free of dangers and hazards, and that Cevallos sustained injuries solely as a result of Kimba's (and 393 Jericho's) negligence. (*See* ECF No. 34 at ¶ 11.) Similarly, though the Queens Action Complaint contends that neither Cevallos nor Muentes contributed to Kimba's failure to discharge its duties owed to Cevallos, Fortegra denies the causation of the accident. (*See* ECF No. 34 at ¶ 12.) On April 24, 2024, Cevallos served his Verified Bill of Particulars whereby he alleged that because of the occurrence, his right middle finger was amputated, and he sustained injuries to his right hand, wrist, and elbow. (ECF No. 34 at ¶ 14) (referencing ECF No. 23-4.)

C. *Coverage Under the CGL Policy*

On January 10, 2023, Fortegra denied coverage under the CGL Policy for Kimba's alleged non-compliance with "Section IV – Designated Subcontractor or Independent Contractor Warranty," namely that the work involved Muentes, a subcontractor hired by Kimba. (*See* ECF No. 34 at ¶ 18 (citing ECF No. 23-7, Ex. 6); *see also* ECF No. 40 at ¶ 10.) According to Fortegra, Kimba failed to meet the Warranty's requirements that Kimba: "(1) obtain a certificate of insurance showing that Muentes had $2 million in liability coverage in force, (2) have a written contract with the subcontractor which provided for indemnification of Kimba for all claims arising out of Muentes work, (3) be named as an additional insured on the subcontractor's policy, and (4) the policy was required to contain the specified coverage." (ECF No. 40 at ¶ 11.)

Though Fortegra avers that at the time of the notice of the Cevallos claim Kimba did not provide Fortegra with a written contract with Muentes providing for indemnification of Kimba, a condition imposed under the Endorsement, Kimba disputes this, contending that a written contract was provided to Fortegra on September 14, 2023 ("September 14 Letter") as part of Kimba's notice claim. (*Id.* at ¶ 12.) The September 14 Letter was Kimba's correspondence to counsel for Fortegra asserting its entitlement to a defense in the Queens Action, stating that because "there is no allegation in the Cevallos action that the injury arose from Muentes acts of the subcontractor, Muentes," Fortegra's reliance on the Endorsement is misplaced. (*Id.* at ¶ 17) (referencing ECF No. 33-7 at pp. 2-3). Additionally, Kimba asserted that Fortegra had a duty to defend the Cevallos action and demanded a defense. (*Id.* at ¶ 20.)

The September 14 Letter also contains a footnote providing:

Contrary to Fortegra's rejection letter, Muentes did provide Kimba with a written contract that indemnified Kimba for all claims arising out of the subcontractor's work (copy attached). That written indemnity contract was provided to Fortegra's claims representatives. Although irrelevant, we also are not aware what, if any, investigation Fortegra undertook to determine if Muentes maintained the appropriate liability insurance.

(ECF No. 40 at ¶ 19 (citing ECF No. 33-7)).

Kimba objected to the denial of coverage under the CGL Policy, arguing that "[n]either the Verified Complaint nor the [Verified Bill of Particulars] alleged that Cevallos's injuries were caused by anyone other than Kimba, Fortegra's insured" and that "Cevallos never alleged that his injuries arose from the acts of a subcontractor or independent contractor working on Kimba's behalf." (ECF No. 23-1 at ¶¶ 19, 22.) Additionally, Kimba refers to Section IV's exclusion and that it "applies only if the bodily injury arose from Muentes' alleged covered acts." (*Id.* at ¶ 23) (referencing ECF No. 23-2, CGL Policy, Section IV). USI Insurance Services, in an August 17, 2023, letter to Fortegra advising Fortegra of a claim against Kimba by Cevallos, noted that

Fortegra had a duty to defend Kimba under the CGL Policy. (*See id.* at ¶ 24 (citing ECF No. 23-8, Ex. 7 at p. 3); *see also* ECF No. 40 at ¶ 4.)

On December 2, 2022, Hiscox Insurance Company issued a Certificate of Insurance to Fortegra which stated that Muentes is insured under a general liability policy issued by Hiscox for the period of September 8, 2022 to September 28, 2023 with limits of $1 million per occurrence. (ECF No. 40 at ¶¶ 7, 14) (referencing ECF No. 33-4). Kimba is not included as an additional insured on the Hiscox policy issued to Muentes and the policy does not contain the coverage provisions required by the Fortegra Warranty Endorsement. (*Id.* at ¶ 15.) Indeed, on June 3, 2024, Hiscox declined coverage for the claim for contractual indemnification for the Cevallos claim based on the agreement between Kimba and Muentes whereby Muentes would provide contractual indemnification to Kimba. (*See id.* at ¶ 22.)

## THE LEGAL FRAMEWORK

On a summary judgment motion, the movant must demonstrate there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Radwan v. Manuel*, 55 F.4th 101, 113 (2d Cir. 2022). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden is on the movant to demonstrate the absence of a genuine issue of material fact, which can be met by pointing to a lack of evidence supporting the nonmovant's claim. *Celotex Corp. v. Catrett*¸ 477 U.S. 317, 323, 325 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Once the movant meets its initial burden, the burden shifts and the nonmovant may defeat the motion only by adducing evidence of specific facts that raise a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250; *Davis v. New York*¸ 316 F.3d 93, 100 (2d Cir. 2002).

"The Court is to believe the evidence of the non-movant and draw all justifiable inferences in her favor, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts." *Sosa v. New York City Dep't of Educ.*, 406 F. Supp. 3d 266, 268 (E.D.N.Y. 2019) (internal citations omitted). The role of the court at the summary judgment phase is not to *resolve* disputed issues of fact but only undertake an analysis to *identify* whether triable issues of fact exist. *See Kee v. City of New York*, 12 F.4th 150, 167 (2d Cir. 2021). That is, the court's function is "issue-finding," not "issue-resolution." *Carolina Cas. Ins. Co. v. Cap. Trucking Inc.*, 523 F. Supp.3d 661, 668 (S.D.N.Y. 2021) (citing *Gallo v. Prudential Residential Servs., Ltd. P'ship* 22 F.3d 1219, 1224 (2d. Cir. 1994)). *Au fond*, the court's role is to decide whether, "after resolving all ambiguities and drawing all inferences in favor of the nonmovant, a reasonable jury could return a verdict for the nonmovant." *Miller v. N.Y. State Police*, No. 20-3976, 2022 WL 1133010, at *1 (2d Cir. Apr. 18, 2022) (citing *Anderson*, 477 U.S. at 248 and *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127, 129 (2d Cir. 2013)).

It is within this framework that the cross-motions for summary judgment are considered.

## DISCUSSION

Kimba seeks summary judgment on "all claims for relief asserted in [its] complaint in this action," which alleges a breach of the CGL Policy by Fortegra and seeks a declaratory judgment that Fortegra is obligated under the CGL Policy to defend and indemnify Kimba in the Queens Action. (ECF No. 42; ECF No. 42-1 at p. 11; *see* ECF No. 1 at pp. 3-5.) Fortegra moves for summary judgment under the CGL Policy that it had no duty to defend or indemnify Kimba. (*See* ECF No. 41 (Fortegra's Notice of Motion seeking "an order granting summary judgment under Rule 54,[2] and for such further relief this Court deems just"); ECF No. 41-11 at p. 5

---

[2] Federal Rule of Civil Procedure 56 governs motions for summary judgment, not Rule 54. *See Reid v. City of New York*, No. 1:20-CV-3926 (PK), 2024 WL 5239204, at *3 (E.D.N.Y. Dec. 27, 2024).

("Fortegra submits this Memorandum of Law in support of its Motion for Summary Judgment dismissing …") (ellipses in original); ECF No. 41-11 at p. 17 ("Summary Judgment should be granted to Fortegra.").

### A.  Interpretations of Insurance Policies Under New York Law

The Court has subject matter jurisdiction on the basis of diversity jurisdiction under 28 U.S.C. § 1332. (ECF No. 1 at ¶ 4.) As such, the substantive law to be applied is state law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). "A federal court sitting in diversity must apply the choice of law rules of the forum state." *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1538 (2d Cir. 1997). In deciding which state's law to apply in an insurance dispute, New York courts consider "a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." *Id.* at 1539. Here, New York law applies because of the significant contacts in this case, namely that the injury rising to the current dispute occurred in New York, the entity arguing its entitlement to coverage is a New York corporation, the insurer routinely issues policies to New York corporations like Kimba, and both parties rely on New York law in their submissions. *Romco Structural Sys. Corp. v. Axis Ins. Co.*, 596 F. Supp. 3d 464, 470-71 (E.D.N.Y. 2022).

Under New York law, "an insurance agreement is subject to principles of contract interpretation." *Universal Am. Corp. v. Nat. Union Fire Ins. Co.*, 37 N.E.3d 78, 80 (N.Y. 2015). "An insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *Parks Real Estate Purchasing Crp. V. St. Pail Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) (internal quotation marks omitted); *see Greenfield*, 780

N.E.2d 166, 170 (N.Y. 2002) ("The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent.").

Summary judgment is "generally proper in a contract dispute only if the language of the contract is wholly unambiguous." *Malmsteen v. Universal Music Group, Inc.*, 940 F. Supp. 2d 123 (S.D.N.Y. 2013) (quoting *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 232 F.3d 153, 157 (2d Cir. 2000)); *Romco Structural Sys. Corp. v. Axis Ins. Co.*, 596 F. Supp. 3d 464, 470-71 (E.D.N.Y. 2022) ("The interpretation of a contract is a question of law where the language of the contract is unambiguous.") (citing *Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir. 1985)). Indeed, the very question of "whether the language of a contract is clear or ambiguous is a question of law to be decided by the court." *Compagnie Financiere de CIC et de L'Union Euroeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 158 (2d Cir. 2000).

If a contract is clear and unambiguous, the court should give effect to the plain meaning of the contract's terms and provisions. *Catlin Specialty Ins. Co. v. QA3 Financial Corp.*, 36 F. Supp. 3d 336, 340 (S.D.N.Y. 2014) (citing *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002)). Conversely, where the language in an insurance contract is ambiguous, "the parties may submit extrinsic evidence as an aid in construction, and the resolution of the ambiguity is for the trier of fact." *Catlin Specialty Ins. Co.*, 36 F. Supp. 3d at 341 (quoting *State v. Home Indem. Co.*, 486 N.E.2d 827, 829 (N.Y. 1985)). Ambiguity is "defined in terms of whether a reasonably intelligent person viewing the contract objectively could interpret the language in more than one way." *Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008); *see Romco Structural Sys. Corp.*, 596 F. Supp. 3d at 471 (noting that a contract is ambiguous where the "language is susceptible to two reasonable interpretations") (citing

*Rothenberg*, 755 F.2d at 1019). Ambiguities, should they exist, "are construed in favor of coverage." *Randolph v. Nationwide Mut. Fire Ins. Co.*, 662 N.Y.S.2d 650, 651 (App. Div. 4th Dep't 1997); *Patriarch Partners, LLC v. Axis Ins. Co.*, 758 F. App'x 14, 20 (2d Cir. 2018) ("Any ambiguities are to be construed in favor of the insured.").

Here, neither party claims ambiguity exists as to any of the CGL Policy terms or provisions. (*See* ECF No. 45 at p. 12 (Fortegra arguing the Warranty Endorsement is "a clear and unambiguous exclusion" and should be enforced as written); ECF No. 42-1 at pp. 10, 14, 15 (Kimba characterizing the Endorsement as clear and unambiguous and stating that to the extent any ambiguity exists it must be construed in favor of coverage)). Indeed, at Oral Argument on September 30, 2025, both parties confirmed that neither was arguing ambiguity. Rather, the sole focus is on the clear terms of the Section IV Warranty Endorsement.

### B. Fortegra Owes a Duty to Defend Kimba in the Queens Action Pursuant to the Clear, Unambiguous Terms of the CGL Policy

"'[U]nder New York law, the insurer's duty to furnish a defense is broader than its obligation to indemnify.'" *Great Am. Ins. Co. v. Houlihan Lawrence, Inc.*, 449 F. Supp. 3d 354, 364 (S.D.N.Y. 2020) (quoting *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 620 (2d Cir. 2001)) (internal quotation marks omitted) (citation omitted). "The duty to defend is triggered whenever the allegations within the 'four corners' of the complaint potentially give rise to a covered claim." *WTC Captive Ins. Co. v. Liberty Mut. Fire Ins. Co.*, 549 F. Supp. 2d 555, 560 (S.D.N.Y. 2008) (citing *Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co.*, 690 N.E.2d 866, 868 (N.Y. 1997)). Where the duty to defend is clear and unambiguous on the face of the insurance policy, it will be enforced according to its terms. *IBM v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 144 (2d Cir. 2004); *Those Certain Underwriters at Lloyd's, London v. DVO, Inc.*, 473 F. Supp. 3d 236, 255 (W.D.N.Y. 2020) ("If the allegations of the complaint are even potentially

within the language of the insurance policy, there is a duty to defend.") (quoting *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 779 N.E.2d 167, 170 (N.Y. 2002)).

Here, the CGL Policy provides, in relevant part, that:

[Fortegra] will pay those sums that [Kimba] becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies. We will have the right and duty to defend the insured against any suit seeking those damages. . . . This insurance applies to bodily injury and property damage only if: (1) The bodily injury or property damage is caused by an occurrence that takes place in the coverage territory; (2) The bodily injury or property damage occurs during the policy period; and (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.

(ECF No. 23-2, CGL Policy, Section 1, A(1)(a), (b)).

The CGL defines "bodily injury" as "bodily injury, sickness or disease sustained by a person . . . ." *Id.* at Section V(3). An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at Section V(13). The "coverage territory" includes, in pertinent part, the United States of America, and "suit" refers to a "civil proceeding in which damages because of 'bodily injury' . . . to which this insurance applies are alleged." *Id.* at V(4), (18). Lastly, the CGL "policy period" spans from August 1, 2022 to August 1, 2023. *Id.* at p. 4.

Here, on November 14, 2022, Cevallos sustained an accident which is the "occurrence" at the warehouse located at 393 Jericho Turnpike, Mineola, New York 11501. (*See* ECF No. 42-5 at ¶¶ 6-7.) The accident resulted in "bodily injury" considering Cevallos sustained permanent personal injuries, including amputation of his right middle finger, in addition to sprains and/or strains to his hand, wrist, and elbow. (*See id.* at ¶ 15); *see also City of New York v. Harleysville Ins. Co.*, 682 F. Supp. 3d 335, 337-38 (S.D.N.Y. 2023) (determining defendant had a duty to

defend plaintiff where it asserted that it suffered bodily injury in the form of a "permanent personal injury"). Consequently, Cevallos brought "suit" in the form of the Queens Action on July 11, 2023 seeking damages for these injuries. (*See* ECF No. 42-4.) Additionally, nothing presented to the Court implicates subsection (3) of this CGL Policy provision.

Applying the clear and unambiguous terms of the Policy to the circumstances here, it is clear that Fortegra has a "right and duty to defend [Kimba] against" the Queens Action. *See Houlihan Lawrence, Inc.*, 449 F. Supp. 3d at 364 ("If any allegations in the complaint fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be, an insurer must defend.") (internal quotation marks omitted) (citation omitted). The Court must now determine whether any exclusions exist within the CGL Policy which may serve as grounds for Fortegra's denial of coverage. *See WTC Captive Ins. Co.*, 549 F. Supp. 2d at 560-61 (analyzing whether the disputed exclusion relieved the insurers of their duty to defend after determining the subject policy included an unambiguous duty to defend).

### C. Fortegra Breached the CGL Policy by not Tendering a Defense Since the Designated Subcontractor Warranty Endorsement Does Not Apply

An insurer "must afford its insured a defense unless it can show that the allegations of the complaint put it solely within the policy exclusion." *Alexanian v. Gov't Emps. Ins. Co.*, No. 21-CV-05427 (LDH) (TAM), 2024 WL 1345216, at *3 (E.D.N.Y. Mar. 29, 2024) (quoting *Allstate Ins. v. Mugavero*, 589 N.E.2d 365, 370 (N.Y. 1992)); *Int'l Paper Co. v. Cont'l Cas. Co.*, 320 N.E.2d 619, 621 (N.Y. 1974) (finding the insurer is "obligated to demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions . . . .") Indeed, the "duty to defend exists, and perdures until it is determined *with certainty* that the policy does not provide coverage." *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 620 (2d Cir. 2001) (emphasis in original).

"To avoid its duty to defend by citing to exclusions within the subject policy, an insurance company must establish that 'the exclusions . . . apply in the particular case . . . and that they are subject to no other reasonable interpretation.'" *120 Greenwich Development Associates, L.L.C. v. Admiral Indem. Co.*, No. 08 Civ. 6491 (LAP), 2013 WL 12331487, at *6 (S.D.N.Y. Sept. 15, 2013) (quoting *Seaboard Sur. Co. v. Gillette Co.*, 476 N.E.2d 272, 275 (N.Y. 1984)) (internal citations omitted). Courts overwhelmingly consider this a "heavy burden" for the insurer to carry. *Napoli, Kaiser & Bern, LLP v. Westport Ins. Corp.*, 295 F. Supp. 2d 335, 338 (S.D.N.Y. 2003) (quoting *Frontier Insulation Contractors, Inc. v. Merchs. Mut. Ins. Co.*, 690 N.E.2d 866, 868 (N.Y. 1997)). This "heavy burden" an insurer bears when seeking to avoid its duty to defend is one that "in practice, is rarely met.'" *Liberty Ins. Corp. v. WSP USA, Inc.*, No. 17-CV-4398 (JPO), 2018 WL 3148358, at *3 (S.D.N.Y. June 27, 2018) (citation omitted).

Here, the "**Designated Subcontractor or Independent Contractor Warranty**" provides that:

> For any subcontractor or independent contractor *not specified in the SCHEDULE above*, the insured must comply with the conditions listed below:
>
> (1) You must obtain Certificates of Insurance from all subcontractors or independent contractors, prior to commencement of any work performed on your behalf by that contractor, evidencing:
>
> > a. That the subcontractor or independent contractor is the Named Insured on a Commercial General Liability policy which has limits of insurance which are equal to or greater than:
> > > i. Each Occurrence Limit $2,000,000
> > > ii. General Aggregate Limit $2,000,000
> > > iii. Products/Completed Operations Aggregate Limit $2,000,000
> >
> > b. Workers Compensation insurance in compliance with the statutes of the applicable state and Employers Liability Insurance
> >
> > c. That the insurance is provided by a carrier(s) holding an A.M. Best rating of A- VII or better

d. That the insurance remains in full force without lapse in coverage from the date on which the contract for work being performed is executed until the date on which it is completed.

(2) You must:

a. Obtain written hold harmless agreements which are signed and executed from subcontractors or independent contractors, prior to commencement of any work performed on your behalf by that contractor, which indemnifies you against all losses, including expenses and legal fees, for the work performed for you by any and all subcontractors or independent contractors

b. Be added as an Additional Insured on all General Liability policies issued to all subcontractors or independent contractors and a copy of the endorsement must be received by you prior to the commencement of any work performed on your behalf by that contractor

(3) You must confirm the following applies to the coverage held by the subcontractor or independent contractor:

a. Coverage includes "bodily injury" and "property damage" arising out of work being contracted for by you;

b. Coverage does not exclude any claim, "suit", loss, cost, or expense arising out of any "bodily injury" to any person hired by that subcontractor or independent contractor; and

c. Does not contain any conditions or provisions that preclude coverage based on requirements for hiring or contracting with subcontractors or independent contractors

If at the time of an "occurrence" involving a subcontractor or independent contractor, any of the above conditions are not met with respect to such subcontractor or independent contractor, we will have no duty to defend or indemnify any insured for "bodily injury", "property damage" and "personal and advertising injury" arising out of any covered acts of such subcontractor or independent contractor working for you or on your behalf.

(ECF No. 23-2, CGL Policy, Section IV) (emphasis added).

The "**SCHEDULE**" refers exclusively to "[a]ll work or activities performed in the State of New York." (*Id.* at p. 1) (emphasis added).

The Designated Subcontractor Warranty Endorsement is the *sole* ground Fortegra points to for its denial of coverage.[3] Indeed, in its January 10, 2023 denial letter to Kimba, Fortegra "determined that no coverage is provided under the policy for this claim," citing Kimba's alleged non-compliance with the conditions listed in the Designated Subcontractor Warranty Endorsement. (*See* ECF No. 41-6 at p. 6 ("No coverage is provided under the Fortegra policy for this claim because the requirements of the above-referenced subcontractor or independent contractor warranty have not been complied with.")).

Conversely, Kimba contends that it was not required to comply with the conditions under the Endorsement because Muentes did not engage in a "covered act" pursuant to the last paragraph of the Endorsement. (*See* ECF No. 23-2, CGL Policy, Section IV, p. 2.) In Kimba's September 14, 2023 letter to Fortegra demanding a defense and indemnity in connection with the Queens Action, Kimba argued that:

> The [Queens Action] Complaint alleges that Fortegra's insured's negligence caused the Plaintiff to suffer his injuries and does not allege that Plaintiffs injuries arose out of any covered act of any such contractor or independent contractor working on Kimba's behalf. Thus, pursuant to Section IV, the Designated Contractor Contractual Responsibility endorsement does not apply because that endorsement only applies if the bodily injury arose from Muentes' alleged covered acts. (See Section IV. 3.) Since there is no allegation that the injuries resulted from Muentes' actions, Fortegra's reliance on the endorsement is misplaced.

(ECF No. 42-10 at p. 4.)

This position was reiterated in USI Insurance Services' August 17, 2023 letter to Fortegra disputing the basis for denial of coverage under the Endorsement. (*See* ECF No. 42-9 ("It is essential to emphasize that for the Warranty's exclusionary language to apply, the bodily injury

---

[3] During Oral Argument, both parties conceded that the sole basis for Fortegra's denial of coverage was Kimba's alleged noncompliance with the conditions of the Warranty Endorsement.

must arise from a covered act by the subcontractor, and at least one of the specified conditions must not be met.")).

These arguments are all for naught since the Designated Subcontractor Warranty Endorsement does not apply in the first instance. The clear and unambiguous language of the Endorsement states that "[f]or any subcontractor or independent *not specified in the SCHEDULE* . . . the insured must comply with the conditions listed below." (ECF No. 23-2, CGL Policy, Section IV, p. 1) (emphasis added) The "**SCHEDULE**" is limited to "[a]ll work or activities performed in the state of New York." (*Id.*) The subcontractor, Muentes, performed its work in New York,[4] thereby making it a subcontractor "specified in the Schedule." It follows, therefore, that Kimba was not required to "comply with the conditions" listed, conditions that served as the entire basis for Fortegra's denial of coverage to Kimba. Furthermore, neither party argues that this "**SCHEDULE**" is ambiguous, nor does the Court find any ambiguity upon its own review.

Fortegra's denial letter sent to Kimba on January 10, 2023 denying coverage wholly misstates the Endorsement's language. Contrary to the express language of the "**SCHEDULE**," the denial letter states:

> The schedule on the endorsement sets forth the designated subcontractor or independent contractor exempt from the requirements as follows:
>
> All work or activities performed *outside the State of New York* . . .
>
> As set forth above, only work *performed outside the State of New York* is exempt from the requirements of the endorsement. Because the work here occurred within the State of New York, the endorsement applies.

(ECF No. 41-6 at p. 6) (emphasis added).

---

[4] There is no dispute, and the parties agreed during Oral Argument, that Muentes performed his work in New York.

While Fortegra is correct that the work performed by Muentes occurred within New York, it misstates the clear terms of the Endorsement and attempts to thrust strict requirements upon Kimba as a precondition to coverage under the CGL Policy. (*See id.* ("Pursuant to this endorsement, and because the work herein involved a subcontractor hired by Kimba, Muentes Carpets, the endorsement *required* Kimba to obtain" among other requirements, "a certificate of insurance showing that Muentes had $2million in liability coverage in force")) (emphasis added). In their motion papers, neither party mentions, let alone analyzes, this inconsistency. Indeed, during Oral Argument, counsel for Fortegra argued that Muentes' name needed to be included under the "**SCHEDULE**" however the Court notes that adding this requirement that is neither within the CGL Policy nor in Fortegra's January 10, 2023 denial letter would be adding language to the otherwise unambiguous CGL Policy. Similarly, at Oral Argument, Fortegra's counsel even agreed that the denial letter was inconsistent and contrary to the explicit terms of the Policy.

Accordingly, because the Endorsement does not preclude coverage, and because Fortegra has not complied with the clear and unambiguous terms of the CGL Policy by failing to satisfy its duty to defend, Kimba's motion for summary judgment on its breach of contract claim is granted. *See Union Mut. Fire Ins. Co. v. 313 Linden St., LLC*, No. 22-CV-1264 (PK), 2025 WL 929468, at *6 (E.D.N.Y. Mar. 27, 2025) (granting summary judgment on the breach of contract claim where there was "no dispute" that the accident constituted "bodily injury" triggering a duty to defend, and "no dispute" that the conditions of the "Sub-Contractors Conditions Endorsement" were not satisfied).

### D. <u>Kimba is Entitled to a Declaratory Judgment</u>

The Declaratory Judgment Act empowers federal courts to issue declaratory judgments. *See* 28 U.S.C. § 2201(a) ("[A]ny [federal] court . . . may declare the rights and other legal

regulations of any interested party" that seeks a declaratory judgment."). A court may exercise its discretion to issue a declaratory judgment by considering "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005) (citation omitted). Moreover, "'[t]he party seeking a declaratory judgment bears the burden of demonstrating that the district court has jurisdiction' by showing that there is an 'actual controversy.'" *Daytree at Cortland Square, Inc. v. Walsh*, 332 F. Supp. 3d 610, 626 (E.D.N.Y. 2018) (quoting 28 U.S.C. § 2201(a)). "Legal disputes over insurance coverage . . . have 'become the paradigm for asserting jurisdiction.'" *Union Mut. Fire. Ins. Co.*, 2025 WL 929468, at *5 (quoting *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 93 (2d Cir. 2023)).

Here, there is no dispute that Fortegra is defending Kimba in the Queens Action, thereby making this action justiciable. *See Union Mut. Fire. Ins. Co.*, 2025 WL 929468, at *6; *see also Mt. Hawley Ins. Co. v. Beach Cruiser, LLC*, No. 22-CV-10354 (GHW), 2025 WL 723365, at *6 (S.D.N.Y. Mar. 6, 2025) (finding the dispute "justiciable" where plaintiff was "incurring defense costs" in the underlying litigation). Additionally, the declaratory judgment "will serve a useful purpose in clarifying or settling the legal issues involved in whether the policy issued by [Fortegra] to [Kimba] creates a duty to defend or indemnify [Cevallos'] claims" and a "judgment would finalize the controversy as to [Fortegra's] responsibilities to defend and indemnify claims in the [Queens Action] and in doing so, offer relief from uncertainty . . . ." *Falls Lake National Ins. Co. v. Kalnitech Constr. Corp.*, 774 F. Supp. 3d 456, 468 (E.D.N.Y. 2025) (internal quotations omitted). Accordingly, Kimba's motion for summary judgment on its claims for a

judicial declaration that Fortegra is required to defend and indemnify Kimba on an ongoing basis in connection with the Queens Action is granted.

### E. Kimba is Entitled to Costs, Expenses, and Prejudgment Interest Incurred in Defending the Underlying Action

Kimba requests that Fortegra reimburse it for "all costs and expenses incurred in defending the *Underlying Action* from the date Fortegra refused to defend." (ECF No. 42-1 at pp. 25-26) (emphasis added). "Where an insurer breaches the duty to defend, it must pay damages in the form of attorneys' fees and litigation expenses reasonably incurred by the insured in defending the underlying action." *LM Ins. Corp. v. Safety Nat'l Cas. Corp.*, 771 F. Supp. 3d 190, 197 (E.D.N.Y. 2025) (quoting *UPS v. Lexington Ins. Group*, 983 F. Supp. 2d 258, 268 (S.D.N.Y. 2013)); *Columbus McKinnon Corp. v. Travelers Indem. Co.*, 367 F. Supp. 3d 123, 155 (S.D.N.Y. 2018) ("Where ... an insured is forced to defend an action because the insurer wrongfully refused to provide a defense, the insured is entitled to recover its reasonable defense costs, including attorneys' fees.") (alteration in original) (citation omitted). "Generally, the insurer will be liable for defense costs from the time that the duty was triggered (i.e., when a complaint alleging facts arguably entitling the insured to coverage is made) until it is determined that the actual facts place the case outside the coverage provided." *UPS*, 983 F. Supp. 2d at 268.

Here, because Kimba has proven that Fortegra wrongfully refused to provide a defense in the Underlying Action, Kimba is entitled to reasonable attorney's fees and costs incurred in its own defense of the Underlying Action. *See LM Ins. Corp.*, 771 F. Supp. 3d 190 (concluding the insured was entitled to collect fees incurred in tendering a defense in the underlying action after determining at summary judgment that the insurer breached its duty to defend in that action).

Similarly, Kimba contends that it is entitled to receive prejudgment interests on costs incurred in defending the Underlying Action. (ECF No. 42-1 at pp. 19-20.) "Under New York law, the awarding of interest on breach of contract claims . . . is non-discretionary." *Turner Const. Co. v. American Mfrs. Mut. Ins. Co.*, 485 F. Supp. 2d 480, 490 (S.D.N.Y. 2007) (citing N.Y. C.P.L.R. § 5001), *aff'd sub nom. Turner Const. Co. v. Kemper Ins. Co.*, 341 F. App'x 684 (2d Cir. 2009). Pursuant to C.P.L.R. § 5004, the amount of prejudgment interest to be awarded in breach of contract claims is nine percent per annum. *Harleysville Worcester Ins. Co. v. Wesco Ins. Co.*, 314 F. Supp. 3d 534, 551 (S.D.N.Y. 2018). Entitlement to prejudgment interest is all the more appropriate where, like here, an insurer has breached its duty to defend under the clear terms of an insurance policy and the insured incurred costs in defending the underlying action. *See SAS Group, Inc. v. Great American E&S Ins. Co.*, No. 08 Civ. 1020 (LMS), 2010 WL 11590320, at *10 (S.D.N.Y. Nov. 9, 2010) (finding plaintiffs entitled to prejudgment interest on plaintiffs' breach of contract claim against the insurer on fees and costs incurred by the insured "in defending the underlying action"); *see also UPS*, 983 F. Supp. 2d at 268.

Accordingly, Kimba's request that it be compensated for all costs and expenses incurred in defending the Underlying Action, in addition to prejudgment interest at 9% per annum on those costs, is granted. Because Kimba has not submitted invoices for its defense costs and litigation expenses incurred in the Underlying Action, a specific award of damages, and subsequent determination of prejudgment interest, for breach of contract cannot be made at this time. Accordingly, the parties are directed to files submissions on the issue of damages as outlined below. *See UPS*, 983 F. Supp. 2d at 268.

To the extent that Kimba's application is construed as seeking fees and costs expended in the *current* action, Kimba's application is denied under *Mighty Midgets*. *See LM Ins. Corp.*, 771

F. Supp. 3d at 199 (granting the motion for attorney's fees incurred in defending the underlying action and distinguishing that circumstance from the separate motion for fees incurred in the affirmative action brought by the insured). Namely, an "insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy." *N.Y. Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 772 (N.Y. 1995) (citation omitted); *Mighty Midgets, Inc. v. Centennial Ins. Co.*, 389 N.E.2d 1080, 1085 (N.Y. 1979) ("[I]t has now long been the universal rule in this country not to allow a litigant to recover damages for the amounts expended in the successful prosecution or defense of its rights.").

Here, Kimba has not been put in a "defensive position" in this action. Nor does Fortegra's denial of coverage transform this position into a "legal step" under *Mighty Midgets*. *See A&M Warshaw Plumbing & Heating, Inc. v. Mount Vernon Fire Ins. Co.*, No. 24-cv-5430 (RA), 2025 WL 69972, at *5 (S.D.N.Y. Jan. 10, 2025). Sending denial letters, as Fortegra did here, does not "transform the denials in a *Mighty Midgets* legal step" because "denial letter[s] and follow-up exchanges are routine disclaimers of coverage that do not suffice to place [an insured] in a defensive posture." *Match Group, LLC*, 2024 WL 863468, at *2 (declining to award attorney's fees to the insured for failing to establish that it was cast in a defensive position by the legal steps taken by the insurer). Moreover, Kimba initiated the current action "on its own accord" and without being "prompted by any earlier 'legal steps' taken by [the insurer]." *A&M Warshaw Plumbing & Heating, Inc.*, 2025 WL 69972, at *4-5 ("Because this suit was unprompted by any such actions by [the insurer], it is an 'affirmative action' for which [the insured] may not recover fees under New York law."). Kimba has also not demonstrated any bad faith on the part of Fortegra in denying coverage.

## CONCLUSION

For the foregoing reasons, Fortegra's motion for summary judgment (ECF No. 41) is **DENIED** in its entirety and Kimba's motion for summary judgment (ECF No. 42) is **GRANTED**. Because Fortegra owes Kimba a duty to defend in the Underlying Action, Fortegra must reimburse Kimba for reasonable attorneys' fees and litigation expenses incurred in defending the Underlying Action, plus pre-judgment interest at a rate of 9% per year. Kimba is directed to file a motion for fees and costs on or before **October 17, 2025**. Fortegra's response is due on or before **October 31, 2025**, with Kimba's reply, if any, due on or before **November 14, 2025.**

Dated: Central Islip, New York
          October 1, 2025

SO ORDERED:

/s/ *James M. Wicks*
          JAMES M. WICKS
          United States Magistrate Judge