**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
KIMBA INDUSTRIES INC.,

     *Plaintiff,*


    -against-


FORTEGRA SPECIALTY INSURANCE
COMPANY,

     *Defendant.*
-------------------------------------------------------------X

FILED
CLERK

3/5/2026

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**MEMORANDUM**
**AND ORDER**

24-cv-01334 (JMW)

**A P P E A R A N C E S:**

  Stephen Wagner
  David Rybak
  **Cohen, Tauber, Spievack & Wagner, P.C.**
  420 Lexington Avenue, Suite 2400
  New York, NY 10170
  *Attorneys for Plaintiff*

  Louis G. Adolfsen
  **Melito & Adolfsen P.C.**
  233 Broadway, 28th Floor
  New York, NY 10279
  *Attorney for Defendant*

**WICKS**, Magistrate Judge:

Plaintiff Kimba Industries Inc. ("Kimba"), a general contractor and construction

company, commenced this action against Defendant Fortegra Insurance Company ( "Fortegra")

on February 22, 2024 for Fortegra's failure to provide coverage for claims in an underlying

personal injury lawsuit filed in New York State Supreme Court, Queens County ("Underlying

Action").[1] (*See generally* ECF No. 1.) These claims, according to Kimba, are covered by the

---

[1] The "Underlying Action" refers to *Cevallos v. 393 Jericho Turnpike LLC* (Index No. 714141/2023) currently pending in the Supreme Court of the State of New York, Queens County.

1

commercial general liability policy ("CGL Policy") Fortegra issued to Kimba providing, in relevant part, that Fortegra "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages." (*See id.*)

The parties are now before the Court on Kimba's motion for attorneys' fees and costs following this Court's Memorandum and Order denying Fortegra's motion for summary judgment, determining Fortegra breached its duty to defend Kimba, and finding Kimba was "entitled to reasonable attorney's fees and costs incurred in its own defense of the Underlying Action." *Kimba Industries Inc. v. Fortegra Specialty Ins. Co.*, No. 24-cv-01334 (JMW), 2025 WL 2793670, at *2-4 (E.D.N.Y. Oct. 1, 2025) ("October 1 Order"). For the reasons that follow, Kimba's motion (ECF No. 54) is **GRANTED** in the amount set forth below.

## BACKGROUND

The Court assumes the parties' familiarity with the facts set forth in the October 1 Order that denied Fortegra's motion for summary judgment.  That motion sought a determination that Fortegra owed no duty to defend Kimba in the Underlying Action, which the Court denied, finding that Fortegra owed Kimba a duty to defend. *Kimba Industries*, 2025 WL 2793670, at *10. That conclusion was based on the clear, unambiguous terms of Section 1, A(1)(a) and (b) of the CGL Policy[2] which required Fortegra to defend Kimba for the bodily injury sustained by

---

[2] The CGL Policy provides, in relevant part, that:

> [Fortegra] will pay those sums that [Kimba] becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies. We will have the right and duty to defend the insured against any suit seeking those damages.... This insurance applies to bodily injury and property damage only if: (1) The bodily injury or property damage is caused by an occurrence that takes place in the coverage territory; (2) The bodily injury or property damage  occurs during the policy

Segundo Cevallos ("Cevallos"), a worker employed by Muentes Flooring Inc. ("Muentes") which was a subcontractor retained by Kimba, while Cevallos was working at the warehouse located at 393 Jericho Turnpike, Mineola, New York 11501 ("393 Jericho"). *Id.* at *6-7. Additionally, the Court granted "Kimba's motion for summary judgment on its claims for a judicial declaration that Fortegra is required to defend and indemnify Kimba on an ongoing basis in connection with the Queens Action is granted." *Id.* at *11.

Having determined that Fortegra wrongfully refused to provide a defense in the Underlying Action, the Court concluded that Kimba was entitled to "reasonable attorney's fees and costs incurred in its own defense of the Underlying Action" plus pre-judgment interest at a rate of 9% per annum. *Id.* at *11, *12. Because Kimba did not submit invoices for its defense costs and litigation expenses incurred in the Underlying Action, a specific award of damages, and subsequent determination of prejudgment interest, for breach of contract could not be made at that time. *Id.* at *12.

On October 14, 2025, Fortegra filed a motion to vacate the October 1 Order on the grounds that Fortegra mistakenly included a Designated Subcontractor or Independent Contractor Warranty Endorsement containing a different "SCHEDULE" as part of its motion for summary judgment that, according to Fortegra, was not the parties' intended controlling "SCHEDULE." *See Kimba Industries Inc. v. Fortegra Specialty Ins. Co.*, No. 24-cv-01334 (JMW), 2025 WL 3276890, at *1 (E.D.N.Y. Nov. 25, 2025) ("November 25 Order"). Because of the motion to vacate, the Court held the briefing schedule on Kimba's motion for attorneys' fees

---

period; and (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or   receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage"      had occurred, in whole or in part.

in abeyance pending the resolution of the motion to vacate. (Electronic Order dated October 15, 2025.)

The Court granted Fortegra's motion for reconsideration because differing versions of the "SCHEDULE" "directly pertain[ed] to the Court's underlying rationale for denying Fortegra's motion for summary judgment" and "manifest injustice would result should the Court not consider this new evidence." *Kimba*, 2025 WL 3276890 at *3. Upon reconsideration, however, the undersigned determined that the October 1 Order should not be vacated concluding that the insured never consented to the different "SCHEDULE" and the insured's agents did not have authority to bind the insurer to the change in "SCHEDULE." *See id.* at *4. Accordingly, the Court declined to vacate the October 1 Order and directed that Kimba file its motion for fees and costs, on or before December 9, 2025. *Id.* Fortegra thereafter appealed the November 25 Order (ECF No. 55), which remains pending.[3]

## LEGAL FRAMEWORK

As a preliminary matter, this Court notes that New York law applies. The Court has subject matter jurisdiction on the basis of diversity jurisdiction under 28 U.S.C. § 1332. (ECF No. 1 at ¶ 4.) The substantive law to be applied, therefore, is state law. *Erie R.R. v. Tompkins*, 304

---

[3] "The filing of a notice of appeal is an event of jurisdictional significance -- it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Martinez v. Hasper*, No. 15-CV-5724 (EK)(LB), 2022 WL 118720, at *1 (E.D.N.Y. Jan. 12, 2022) (quoting *Griggs v. Provident Consumer Discount Co*., 459 U.S. 56, 58 (1982)). Notwithstanding the pending appeal, this Court possesses jurisdiction to adjudicate the motion for attorneys' fees because "a notice of appeal does not divest the district court of jurisdiction to do so." *Ramos v. Guaba Deli Grocery Corp.*, No. 20-CV-04904 (PAE) (JLC), 2022 WL 603819, at *1, n.1 (S.D.N.Y. Mar. 1, 2022) (finding that the court still possessed jurisdiction to rule on a motion for attorneys fees following a grant of summary judgment in favor of plaintiffs, despite the fact that defendants have filed a notice of appeal of the grant of summary judgment) (citing *Tancredi v. Metropolitan Life Ins. Co.*, 378 F.3d 220, 225 (2d Cir. 2004) ("[N]otwithstanding a pending appeal, a district court retains residual jurisdiction over collateral matters, including claims for attorneys' fees.")).

U.S. 64, 78 (1938). "A federal court sitting in diversity must apply the choice of law rules of the forum state." *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1538 (2d Cir. 1997). New York courts consider "a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." *Id.* at 1539. Here, New York law applies because of the significant contacts in this case, namely that the injury Cevallos sustained leading to Kimba's claim for coverage occurred in New York, the CGL Policy was formed and executed in New York, and both parties rely exclusively on New York law in their respective submissions. *Romco Structural Sys. Corp. v. Axis Ins. Co.*, 596 F. Supp. 3d 464, 470-71 (E.D.N.Y. 2022).

Under New York law, an insured is entitled to damages in the form of reasonable attorneys' fees incurred in defending the underlying action after a finding is made that the insurer breached the duty to defend. *East Ramapo Central School Dist. v. New York Schools Ins. Reciprocal*, 158 N.Y.S.3d 173, 179 (App. Div. 2d Dep't 2021); *see National Union Fire Ins. Co. of Pittsburgh, PA v. Greenwich Ins. Co.*, 962 N.Y.S.2d 9, 11 (App. Div. 1st Dep't 2013) (noting "the insured's damages are the expenses reasonably incurred by it in defending the action" after the insurer breached its duty to provide a defense in the underlying action); *see also LM Ins. Corp. v. Safety Nat'l Cas. Corp.*, 771 F. Supp. 3d 190, 197 (E.D.N.Y. 2025) ("Where an insurer breaches the duty to defend, it must pay damages in the form of attorneys' fees and litigation expenses reasonably incurred by the insured in defending the underlying action.") (quoting *UPS v. Lexington Ins. Group*, 983 F. Supp. 2d 258, 268 (S.D.N.Y. 2013)).

Generally, the insurer will be liable for defense costs from the time that the duty was triggered until it is determined that the actual facts place the case outside the coverage provided. *See National Union Fire Ins. Co.*, 962 N.Y.S.2d at 11; *see also UPS*, 983 F. Supp. 2d at 268.

5

Under New York law, "[w]hen determining breach of contract damages for breach of an insurer's duty to defend, the attorney's fees paid by the insured are presumed to be reasonable and the burden shifts to the insurer to establish that the fees are unreasonable." *Ramapo Central School District*, 158 N.Y.S.2d at 179; *see Olin Corp. v. Ins. Co. of N. Am.*, 218 F. Supp. 3d 212, 228 (S.D.N.Y. 2016) ("Where an insurer has breached its duty to defend, the insured's fees are presumed to be reasonable and the burden shifts to the insurer to establish that the fees are unreasonable.").

"In the duty to defend context, courts continue to calculate the lodestar figure, which represents the presumptively reasonable fee." *PriMed Pharmaceuticals, LLC v. Indemnity & Liability Co.*, No. 21 Civ. 1025 (SLC), 2024 WL 3842077, at *4 (S.D.N.Y. Aug. 16, 2024) (cleaned up); *Jackson v. Nassau County*, 602 F. Supp. 3d 352, 355–56 (E.D.N.Y. 2022) ("A reasonable award reflects the result of the 'lodestar' analysis, i.e., the product of a reasonable hourly rate (which rate reflects the hourly rate in the District for similar cases) and the reasonable number of hours spent on the tasks for which expenses are sought."). This presumptively reasonable fee is essentially "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal quotation marks and citations omitted); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 191 (noting a reasonable hourly rate is one that a "reasonable, paying client would have paid").

"The method for determining reasonable attorneys' fees in this Circuit is based on a number of factors, such as the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, the experience, reputation and ability of the attorney, and awards in

similar cases." *Scelsi v. Habberstad Motorsport Inc.*, No. 19-CV-4315 (FB), 2021 WL 6065768, at *2 (E.D.N.Y. Dec. 22, 2021) (referencing *Arbor Hill*, 522 F.3d at 184, 186 n.3, 190). Once a reasonable hourly rate is determined, the Court must then "multiply that rate by the number of hours reasonably expended, in order to determine the presumptively reasonable fee." *Id.* (referencing *Arbor Hill*, 522 F.3d at 190). When analyzing an application for attorneys' fees, "excessive, redundant or otherwise unnecessary hours" will be excluded. *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433-35, 440 (1983)). "Additionally, the party seeking expenses must support the award sought with the submission of contemporaneous time records reflecting the hours for each professional, the date and number of hours each spent, and a description of the work performed." *Jackson*, 602 F. Supp. 3d at 356.

## **DISCUSSION**

Kimba submits that it incurred fees and costs in defending the Underlying Action (exclusive of prejudgment interest) in the total amount of $80,236.56.[4] (ECF No. 54-2, Linder Decl. at ¶ 9.)

This figure is comprised of:

(i)     $71,233.56 for the fees and costs already paid by Kimba to its defense counsel in the Underlying Action, Cohen Tauber Spievack & Wagner ("CTSW") in connection with Kimba's defense in the Underlying Action, inclusive of discounts[5] provided by CTSW. (ECF No. 54-4, Wagner Decl. at ¶ 16). This amount consists of $66,575.50 in attorneys fees and $8,499.67 in expenses such

---

[4] Kimba requests a total of $80,236.56 in fees and costs incurred in defending the Underlying Action. (ECF No. 54-2, Linder Decl. at ¶ 9). However, the sum of $71,233.56 and $9,093.00, the two figures making up the requested amount, equals 80,326.56, not $80,236.56.

[5] The original figure of attorneys' fees and expenses Kimba incurred in its defense of the Underlying Action was $75,025.17 however CTSW provided Kimba with "periodic courtesy discounts and waivers on certain invoices" thus the requested $71,233.56 now sought. (ECF No. 54-4, Wagner Decl. at ¶ 16.) As per the invoices, the discounts came in the form of "Courtesy Discounts" in either 5%, 10%, or 15%. (*See* ECF No. 54-9 at pp. 12, 16, 22, 23, 29, 31, 37)

as "filing fees, copying costs, Westlaw charges, court reporters for depositions, and other vendors . . . ." (*Id.* at ¶¶ 14-15); and

(ii)    $9,093.00 for Kimba's retention of an expert witness, Ms. Eugenia Kennedy ("Ms. Kennedy") of Exponent, Inc., for her preparation of an expert report in the Underlying Action relating to the tool that injured Cevallos. (ECF No. 54-2, Linder Decl. at ¶ 8, ECF No. 54-4, Wagner Decl. at ¶ 19).

As such, Kimba seeks an award of $80,236.56 in fees and costs incurred in the Underlying Action, plus prejudgment interest at a rate of 9% per annum. (ECF No. 54-4, Wagner Decl. at ¶ 21.) Kimba also seeks an order pursuant to Fed. R. Civ. P. 70(a) directing Fortegra to provide a defense to Kimba in the Underlying Action. (*Id.* ¶ 23.)

Fortegra "does not dispute that an insured is generally entitled to recover its *reasonable* defense costs where an insurer has breached its duty to defend, nor does Fortegra dispute that defense costs may initially be presumed reasonable." (ECF No. 56 at p. 5) (emphasis in original). Fortegra, however, argues that Kimba's requested award is unreasonable and therefore seeks a reduction of 25% in the requested fees and costs, "or such other reduction as the Court deems reasonable." (*Id.* at pp. 5, 6.)

## I.    Reasonable Hourly Rate

"The Supreme Court directed that district courts should use the prevailing market rates in the community in calculating the lodestar" or presumptively reasonable fee. *Lynch v. Town of Southampton,* 492 F. Supp. 2d 197, 210–11 (E.D.N.Y. 2007) (citing *Blum v. Stenson,* 465 U.S. 886, 895 (1984)). "The 'community' is defined as the district in which the court sits, but courts may consider an 'out-of-district hourly rate—or some rate in between the out-of-district rate sought and the rates charged by local attorneys—in calculating the presumptively reasonable fee

if it is clear that a reasonable, paying client would have paid those higher rates.'" *LM Ins. Corp.*, 771 F. Supp. 3d at 202 (quoting *Arbor Hill,* 522 F.3d at 191).

Kimba submits that it worked a total of 138.4 hours at billing rates ranging from $250 to $890 in connection with Kimba's defense in the Underlying Action for a total of $66,575.50. (ECF No. 54-4, Wagner Decl. at ¶ 14.) This figure accounts for the work conducted by: Stephen Wagner, a partner at CTSW, who bills at $755 per hour and worked one hour on Kimba's defense in the Underlying Action. (*Id.* at ¶ 7.) Joseph M. Vann is a partner at CTSW who bills at an hourly rate of $890.00 and who worked 0.3 hours on Kimba's defense in the Underlying Action. (*Id.* at ¶ 8.) Jackson Davis, a partner at CTSW, worked 19.8 hours in connection with Kimba's defense in the Underlying Action, and bills at $650 per hour. (*Id.* at ¶ 9.) Grace Guo is an associate at CTSW and billed at the rate of $525, and increased to $590 on January 1, 2025, per hour when billing for the Underlying Action and worked a total of 106.8 hours. (*Id.* at ¶ 10.) David Rybak, an associate at CTSW, worked a total of 5.4 hours in connection with Kimba's defense in the Underlying Action and billed at $590.00 per hour. (*Id.* at ¶ 11.) Franchesca De La Cruz, a senior paralegal at CTSW, worked 4.6 hours at $315.00 per hour meanwhile Arpi Salbashian, another paralegal at CTSW, worked 0.5 hours at $250.00 per hour. (*Id.* at ¶¶ 12-13.)

According to counsel for Kimba, Mr. Wagner has been "practicing at both large and small firms since 1985. Mr. Vann has been practicing at both large and small firms for over 30 years. Mr. Davis has been practicing at both large and small firms since 2008. Ms. Guo practiced at a variety of firms since 2016 before relocating to California. Mr. Rybak has been practicing at both large and small firms for the past five years." (*Id.* at ¶ 17.) Their work has consistently been within the commercial litigation sector. (*See id.* at ¶¶ 7-17.)

9

Fortegra hardly scratches the surface in arguing that the submitted hourly rates are unreasonable. Instead, Fortegra's sole mention of the hourly rates was by stating that Kimba's "premium rates substantially exceed what was necessary to litigate the underlying action effectively." (ECF No. 56 at p. 14.) Not only does Fortegra seem to conflate the difference between reasonable *hours* with reasonable *hourly rate*, but Fortegra also fails to support its contention that Kimba's rates were "premium" or why Kimba's hourly rates are excessive or unreasonable. Because this Court has already determined that Fortegra owed Kimba a duty to defend, *see Kimba*, 2025 WL 2793670, at *12, Fortegra maintains the burden of establishing that Kimba's fees are unreasonable—a burden it fails to overcome by simply not addressing the reasonableness of the hourly rates. *Olin Corp.*, 218 F. Supp. 3d at 228 ("Where an insurer has breached its duty to defend, the insured's fees are presumed to be reasonable and the burden shifts to the insurer to establish that the fees are unreasonable.").

Moreover, Kimba has paid CTSW and its expert for *all* fees and costs incurred in connection with Kimba's defense in the Underlying Action. (ECF No. 54-2, Linder Decl. at ¶¶ 7-8; ECF No. 54-4, Wagner Decl. at ¶ 18.) No invoiced amounts remain outstanding and unpaid. (ECF No. 54-2, Linder Decl. at ¶ 7; ECF No. 54-4, Wagner Decl. at ¶ 18.) It is a firmly rooted principle that "the reasonableness of an hourly rate may be determined exclusively by 'the rate a paying client would be willing to pay,'" and here, because Kimba "has in fact paid these rates," the rates are presumptively reasonable. *Diplomatic Man, Inc. v. Nike*, No. 08 Civ. 139 (GEL), 2009 WL 935674, at *6 (S.D.N.Y. Apr. 7, 2009) (quoting *Arbor Hill*, 522 F.3d at 190); *Simmons*, 575 F.3d at 174 (holding that an hourly rate is considered reasonable if that rate is charged to a paying client). Indeed, where a "sophisticated business client[] has paid [its] bills, presumably after careful review by its general counsel or other senior business executives," that "is prima

10

facie evidence of the reasonableness of the amount [of fees] as a whole." *Value Wholesale, Inc. v. KB Ins. Co. Ltd.*, No. 18-cv-5887 (KAM) (SMG), 2020 WL 6393016, at *5 (E.D.N.Y. Nov. 2, 2020) (quoting *Nike Inc.*, 2009 WL 935674, at *6). "And there is no reason that [Kimba], a paying commercial client, would have tolerated repeated excessive billing, given that [Fortegra] was contesting its duty to defend, and had [Fortegra] been successful, [Kimba] may well have ended up on the hook for all of the fees charged by [CTSW]." *Id.* Accordingly, the fact that Kimba has paid all bills and invoices counsels in favor of a finding of reasonableness of the requested rates.

Even where the client pays the attorney's invoices, the Court nonetheless must still ensure that the hourly rate and hours charged are reasonable under the lodestar framework. *See Nike, Inc.*, 2009 WL 935674, at *5 (approving the range of billing rates and amount of hours expended as reasonable in addition to noting that the client has paid those rates). "In the Eastern District of New York, hourly rates range from approximately $300 to $450 per hour for partners, $200 to $325 per hour for associates, and $75 to $150 per hour for paralegals." *LM Ins. Corp.*, 771 F. Supp. 3d at 203 (applying these rates following a finding that the insurer owed a duty to defend and that the insured was entitled to reasonable attorneys' fees incurred in the underlying state court personal injury action) (collecting cases). However, "[a]ttorney's fees, like other goods and services, increase in cost with inflation." *Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 242 (E.D.N.Y. 2025) (quoting *Almond v. PJ Far Rockaway, Inc.*, 2018 WL 922184, at *2 (E.D.N.Y. Feb. 15, 2018)). As such, the updated "forum rates in the Eastern District" after adjusting "for inflation and market conditions" appears now to be in the "$450-$650 for partners, $300-$450 for senior associates, $150-$300 for junior associates, and $100-$150 for paralegals." *Id.* at 243-44.

11

Here, as for the partners, Stephen Wagner seeks an approved hourly rate of $755, Joseph M. Vann seeks an approved hourly rate of $890, and Jackson Davis seeks an approved hourly rate of $650 per hour. (ECF No. 54-4, Wagner Decl. at ¶¶ 7-9.) While higher than the typical range of partner rates, courts have awarded sums as high as $600 for partners under the same factual landscape as the one presented here. *See Value Wholesale*, 2020 WL 6393016, at *6 (approving the rate of $600 per hour for partners in an action where the insured was forced to defend the underlying action despite the insurer being found to have breached its duty to defend). In furtherance of *Value Wholesale*, and after adjusting for inflation and market conditions, the Court finds that a reasonable rate for Wagner, Vann, and Davis, to be $650 per hour considering their extensive experience in the industry and the recently updated hourly rates in this District. *See Rubin*, 763 F. Supp. 3d at 244.

The two associates working on the Underlying Action, Grace Guo and David Ryback, both bill at $590 per hour (ECF No. 54-4, Wagner Decl. at ¶¶ 10-11) which is a rate significantly higher than what is considered "reasonable" for associates in this District. *See Rubin*, 763 F. Supp. 3d at 244-45 (reducing the senior associate rate from $445 to $350 after "[c]onsidering the updated hourly rates in this District"); *Value Wholesale*, 2020 WL 6393016, at *5 (approving a rate of $325 for associates working on the insured's defense in an underlying action following a finding on summary judgment that the insurer breached its duty to defend). In accordance with the recent trend in this District and considering the similarities in experience of Guo and Ryback, the Court finds that $400 per hour to be a reasonable billing rate for both Guo and Ryback.

Further, the rates of $315 for Franchesca De La Cruz and $250 for Arpi Salbashian (ECF No. 54-4 at ¶¶ 12-13) far exceed what is considered reasonable in this District for paralegals. *Trustees of the Pavers & Road Builders Dist. Council Welfare, Pension & Annuity Funds v. Kore*

*Contracting Corp.*, No. 24-cv-3235, 2025 WL 825049, at \*14 (E.D.N.Y. Mar. 14, 2025) ("Courts in this District generally consider hourly rates ranging from $70 to $150 to be reasonable for paralegals"); *Rubin*, 763 F. Supp. 3d at 245 (concluding $125 was a reasonable hourly rate for paralegals considering "the updated hourly rates in this District"). Accordingly, the Court will reduce the rate of Franchesa De La Cruz to $175 and Arpi Salbashian to $150 per hour. *See LM Ins. Corp.*, 771 F. Supp. 3d at 205 (finding that the reasonable rate for "services rendered by paralegals in the Underlying Action" should fall within "the regularly awarded range of $70 to $150").

## II.   Reasonable Hours

The Court next turns to whether the hours expended were reasonable. *Maldonado v. La Nueva Rampa, Inc.*, No. 10 Civ. 8195 (LLS) (JLC), 2012 WL 1669341, at \*13 (E.D.N.Y. May 14, 2012). In this determination, "[t]he relevant issue ... is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). As such, courts consider attorneys' hours "in light of the extent and nature of the legal tasks they performed." *CIT Bank, N.A. v. Ayers*, No. 15-CV-7256 (JFB) (SIL), 2017 WL 6816486, at \*4 (E.D.N.Y. Dec. 5, 2017).

Here, counsel for Kimba worked 138.4 hours in Kimba's defense in the Underlying Action. (*See* ECF No. 54-4, Wagner Decl. at ¶ 14.) Fortegra contends that the Kimba seeks reimbursement for fees and costs "that bear little relationship to the nature, complexity, or demands of the underlying litigation." (ECF No. 56 at p. 5.) Fortegra specially argues that the Underlying Action has been "proceeding in a manner typical of premises liability and construction accident litigation," "involved standard pleadings, limited discovery motion practice

13

presenting no novel questions of law" and conferences that were "merely administrative in nature," and involves no "dispositive motion practice" or trial preparation. (*Id.*)

Fortegra fails to pinpoint what tasks in the Underlying Action were excessive nor does Fortegra explain why the Underlying Action constitutes a "routine" case that does not warrant 138.4 hours of time. Having reviewed the invoices, in addition to the submissions, pleadings and documents in the Underlying Action (*see* ECF No. 56-1, Exs. 2-10), the Court finds that 138.4 hours expended are reasonable. The Underlying Action commenced on July 11, 2023 remains ongoing. During this almost three-year span of the case, Kimba has prepared and filed numerous documents like the Verified Answer with Cross-Claims and discovery demands, and the Underlying Action involves several defendants, a personal injury to a worker, tort claims, and statutory claims as well. (*See* ECF No. 56-1, Ex. 2 ("Underlying Action Verified Complaint") at ¶¶ 32, 41-44, 45-48.) Kimba's submitted invoices accurately reflect this work in a non-duplicative manner. (*See* ECF No. 54-9 at pp. 3, 4, 9, 11, 12, 13, 15, 17, 28, 43.) Moreover, one of the key factual issues of the case—whether the tool that injured Cevallos was defective—required the interviewing, hiring the expert, and communication with the expert, in addition to eventually reviewing the expert report, all of which were properly accounted for in Kimba's submitted bills in a non-duplicative or excessive manner. (*See id.* at pp. 23, 24, 30, 32, 34, 36, 38, 40); *see LM Ins. Corp.*, 771 F. Supp. 3d at 206 (concluding 218.9 hours was reasonable in providing a defense in the underlying litigation after review of the "detailed contemporaneous time records" demonstrating the work performed). The general reasonableness of Kimba's submitted hours is confirmed by a review of the submitted invoices which neither disclose nor demonstrate any obvious problems of excessiveness, duplication of efforts, or waste of time.

Nor does the Court find any "block billing". For example, within the April 2, 2024 invoice, Grace Guo billed for emailing the client regarding discovery, "documents needed and timeline of production," and "pushing EBT dated out pending discovery exchange," all of which were billed as individual entries for either 0.10 or 0.20 hours. (*See* ECF No. 54-5 at p. 11.) Similarly, within the June 2, 2025 invoice, each entry listed contains one task, like calling Grace Guo regarding potential bankruptcy strategies, emailing with the expert, and corresponding with the client regarding case strategies and potential outcomes, all of which were addressed by Grace Guo or Joseph M. Vann and exceeds no more than 0.4 hours in time. (*Id.* at p. 36.) In short, each entry within the submitted invoices allows the Court to determine the reasonableness of the work performed, thus not warranting a percentage reduction for the fees.

In addition, much of the legal work performed in defense of the Underlying Action was "delegated to associates with lower hourly rates" in an effort by Kimba to "keep down costs." (ECF No. 54-1 at pp. 9-10.) Specifically, associates and paralegals worked a total of 117.3 hours on this case, handling discovery matters and engaging in motion practice, whereas partners supervised and billed only 21.1 hours. (ECF No. 54-4, Wagner Decl. at ¶¶ 7-13; *see, e.g.,* ECF No. 54-9 at pp. 9, 11 (Grace Guo drafting discovery demands and communicating about the same), pp. 39, 43 (David Ryback discussing opposition to plaintiff's motions, appearing for discovery conferences, and drafting answer to amended complaint))); *see Macalou v. First Unum Life Ins. Co.*, No. 22-CV-10439 (PKC), 2025 WL 2463624, at *4 (S.D.N.Y. Aug. 27, 2025) (highlighting that a reasonable award of attorneys' fees takes into account whether "tasks like legal research, discovery, and preparing initial drafts of case documents" are those "suitable [] for attorneys more junior, and considerably less expensive, than [partners]"). Indeed, even the partner who billed the most on this matter, Jackson Davis, engaged in tasks customarily

15

undertaken by partners in a large law firm—finalizing pleadings, corresponding with the client, and discussing the case with opposing counsel. (*See* ECF No. 54-9 at pp. 5, 8, 13); *see Kizer v. Abercrombie & Fitch Co.*, No. CV 12-5387 (JS) (AKT), 2017 WL 9512408, at *11 (E.D.N.Y. July 24, 2017). This delegation of work to attorneys who charged less for their work further bolsters the reasonableness of the hours that counsel for Kimba expended in the Underlying Action. *See Nike, Inc.*, 2009 WL 935674, at *5.

Accordingly, considering the nature and scope of services rendered in the Underlying Action, and carefully reviewing the time entries entered by the professionals, the Court finds 138.4 hours to be reasonable.

In light of the foregoing, the attorneys' fees are updated as follows:

| Attorney/Paralegal | Requested Rate | Adjusted Rate | Hours Worked | Updated Total |
|---|---|---|---|---|
| Stephen Wagner | $755.00 | $650.00 | 1 | $650 |
| Joseph M. Vann | $890.00 | $650.00 | 0.3 | $195 |
| Jackson Davis | $650.00 | $650.00 | 19.8 | $12,870.00 |
| Grace Guo | $590.00 | $400.00 | 106.8 | $42,720.00 |
| David Ryback | $590.00 | $400.00 | 5.4 | $2,160.00 |
| Franchesa De La Cruz | $315.00 | $175.00 | 4.6 | $805.00 |
| Arpi Salbashian | $250.00 | $150.00 | 0.5 | $75.00 |
| **Total** | | | | **$59,475.00** |

16

### III.    Costs

Counsel for Kimba seeks reimbursement for "expenses in Kimba's defense in the Underlying Action for filing fees, copying costs, Westlaw charges, court reporters for depositions, and other vendors, for a total of $8,449.67."[6] (ECF No. 54-4, Wagner Decl. at ¶ 15.) Counsel for Fortegra does not dispute the reasonableness of -- or entitlement to -- any of the requested costs.  Notwithstanding, the Court reviews the propriety of the request.

A request for costs must be supported by adequate documentation. *Feltzin v. Union Mall LLC*, 393 F. Supp. 3d 204, 219-20 (E.D.N.Y. 2019) (collecting cases). "[T]he party moving for costs bears the burden of demonstrating the reasonableness of each charge; failure to provide adequate documentation of costs incurred will limit, or even defeat, recovery." *Id.* (internal quotation marks omitted). "[T]he decision of whether to award costs . . . 'is committed to the sound discretion of the district court.'" *Swiatkowski v. Citibank as Citigroup*, 745 F. Supp. 2d 150, 174 (E.D.N.Y. 2010) (quoting *Cosgrove v. Sears, Roebuck, Co.*, 191 F.3d 98, 102 (2d Cir. 1999)).

A party can typically recover "[c]osts relating to filing fees [and] process servers[.]" *Feltzin*, 393 F. Supp. 3d at 219-20. Court filing fees, process servers, printing and photocopying, messenger services, postage, telephone costs, transcripts, travel, transportation, meals and other "[o]ut of pocket litigation costs are generally recoverable if they are necessary for the representation of the client." *AW Indus., Inc. v. Sleep Well Mattress, Inc.*, No. 07-CV-3969(SLT) (JMA), 2009 WL 485186, at *6 (E.D.N.Y. Feb. 26, 2009); *Altman v. Inc. Village of Lynbrook*, No. 18-CV-04984 (JMA) (LGD), 2022 WL 3340623, at *7 (E.D.N.Y. Aug. 11, 2022) (quoting

---

[6] When adding the sums of each amount listed next to "Total Expenses" for each submitted invoice, the total sum accurately comes to $8,449.67. (*See* ECF No. 54-9 at pp. 3, 5, 6, 12, 14, 16, 18, 20, 22, 23, 27, 29, 31, 34, 39.)

*Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381, 401 (S.D.N.Y. 2000) ("Courts have identified the following non-exhaustive list of expenses as those ordinarily charged to clients, and therefore, recoverable: photocopying, travel, telephone costs, and postage.")).

Here, counsel for Kimba submits documented proof that it paid $216.28 for the filing fee paid in the Underlying Action (ECF No. 54-9 at p. 3) and is therefore entitled to such a cost. *Feltzin*, 393 F. Supp. 3d at 219-20. In addition, counsel for Kimba submits invoices demonstrating the charges incurred for running "WestLaw – Online Research" searches totaling $521.21. (ECF No. 54-9 at pp. 16, 22, 27, 39.) Counsel for Kimba, therefore, is entitled to these costs. *See Altman*, 2022 WL 3340623, at *7 (awarding charges incurred from running WestLaw searches that were "properly documented" through invoices).

Moreover, counsel for Kimba documents the copying charges totaling $268.75 consisting of color copying and photocopying documents (*see* ECF No. 54-9 at pp. 5, 16, 18, 27, 29, 31) which Kimba is entitled also to as a reasonable litigation cost incurred in the Underlying Action. *Mhany v. Management Inc. v. County of Nassau*, No. CV 05-2301 (ADS) (ARL), 2018 WL 11605900, at *15 (E.D.N.Y. Dec. 13, 2018) (awarding the "routinely recoverable" costs for, *inter alia*, photocopying, printing, and binding where attorneys provided records of such). Further, counsel is entitled to the $882.70 expended on court reporter costs (*see* ECF No. 54-9 at p. 20) that were plainly documented as well. *See Kim v. J& Safetymate Corp.*, No. 22-CV-1070 (TAM), 2025 WL 2783273, at *6-7 (E.D.N.Y. Sept. 30, 2025) (awarding court reporter fees considering they are "routinely recoverable as litigation costs" when supported by documented proof). The remainder of the expenses for outside vendor services, court file runners, FedEx shipping, and process server costs are also widely considered to be "recoverable litigation costs" and properly account for the remainder of the costs Kimba now seeks. (*See* ECF No. 54-9 at pp. 5, 6, 12, 14,

18

20, 22, 23, 34); *see also Larsen v. JBC Legal Group, P.C.*, 588 F. Supp. 2d 360, 365 (E.D.N.Y. 2008) (collecting cases where process server charges, FedEx fees, and court runner fees are recoverable litigation expenses); *Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC*, 549 F. Supp. 2d 274, 286 (E.D.N.Y. 2008) (awarding defendant reimbursement "for its expenses related to photocopies, telephone calls, postage, court fees, facsimiles, transcripts, messenger services, process servers and outside vendor services" considering these are "routinely recoverable").

Accordingly, counsel for Kimba is entitled to $8,449.67 in costs incurred in Kimba's defense in the Underlying Action.

## IV.    Expert Fees

Kimba submits that it has incurred and already paid expenses of $9,093.00 for the retention of Ms. Kennedy in the Underlying Action. (ECF No. 54-4, Wagner Decl. at ¶ 19.) In an effort to mitigate these costs, Kimba and its co-defendant in the Underlying Action, 393 Jericho, agreed to evenly split to costs associated with Ms. Kennedy. (ECF No. 54-2, Linder Decl. at ¶ 8, ECF No. 54-3 (Exponent, Inc. Invoice and wire confirmation of Kimba's payment for its share of such services in the amount of $9,093.00)). While Fortegra argues that the Underlying Action did not involve "expert motion practice," Fortegra's papers are silent as to whether the costs associated with Kimba's expert are unreasonable.

It is firmly established in this District that a party is entitled to recover fees incurred with hiring an expert so long as those charges incurred are properly documented. *See, e.g., Olsen v. County of Nassau*, No. CV 05-3623 (ETB), 2010 WL 376642, at *8 (E.D.N.Y. Jan. 26, 2010) (collecting cases finding expert fees to be "routinely recoverable"). Here, counsel for Kimba submits documented proof of its $9,039.00 payment to Exponent Inc. with the message reading "Kimba's share-half of total invoice." (ECF No. 54-3, Ex. A at p. 4.) This same submission

19

clearly depicts Ms. Kennedy's work in the Underlying Action was dedicated to reviewing the client's file, discussing the preparation of her report with Kimba, and the subsequent drafting of the report. (*See id.* at p. 3.) Accordingly, counsel for Kimba is entitled to an award of $9,093.00 in expenses incurred through the retention of its expert.

## V.        Pre-Judgment Interest

"Under New York law, the awarding of interest on breach of contract claims ... is non-discretionary." *Turner Const. Co. v. American Mfrs. Mut. Ins. Co.*, 485 F. Supp. 2d 480, 490 (S.D.N.Y. 2007) (citing N.Y. C.P.L.R. § 5001), *aff'd sub nom. Turner Const. Co. v. Kemper Ins. Co.*, 341 F. App'x 684 (2d Cir. 2009). Pursuant to C.P.L.R. § 5004, the amount of prejudgment interest to be awarded in breach of contract claims is nine percent per annum. *Harleysville Worcester Ins. Co. v. Wesco Ins. Co.*, 314 F. Supp. 3d 534, 551 (S.D.N.Y. 2018). In New York, a claim for breach of contract accrues upon breach. *See Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007). Therefore, "[t]he court should calculate pre-judgment interest 'from the earliest ascertainable date the cause of action existed . . . to the date the verdict was rendered or the report or decision was made.'" *Prime Contractors Inc. v. APS Contractors Inc.*, 786 F. Supp. 3d 524, 555 (E.D.N.Y. 2025) (adopting report and recommendation) (quoting N.Y. C.P.L.R. §§ 5001(b)–(c), 5004).

Entitlement to prejudgment interest is all the more appropriate where, like here, an insurer has breached its duty to defend under the clear terms of an insurance policy and the insured incurred costs in defending an underlying action. *See SAS Group, Inc. v. Great American E&S Ins. Co.*, No. 08 Civ. 1020 (LMS), 2010 WL 11590320, at *10 (S.D.N.Y. Nov. 9, 2010) (finding plaintiffs were entitled to prejudgment interest on plaintiffs' breach of contract claim against the insurer on fees and costs incurred by the insured "in defending the underlying

20

action"); *see also Value Wholesale*, 2020 WL 6393016, at *8 (concluding the insured was entitled to prejudgment interest under § 5001 after determining the insurer owed a duty to defend under the terms of the commercial general liability policy).

Under New York law, following an insurer's breach of its policy obligations, "prejudgment interest starts to accrue" from the "date each invoice was paid." *Olin Corp. v. Lamorak Ins. Co.*, 517 F. Supp. 3d 161, 182 (S.D.N.Y. 2021); *UPS*, 983 F. Supp. 2d at 268 ("Where an insured breaches the duty to defend . . . [t]he insurer must also pay interest at a rate of nine percent from the date of each legal bill."); *Julio & Sons Co. v. Travelers Cas. & Sur. Co. of Am.*, 684 F. Supp. 2d 330, 336 (S.D.N.Y. 2010) ("[O]nce an insurer has breached its duty to defend, 'prejudgment interest should be assessed against [the insurer] based on dates Plaintiff [] paid each bill for attorney's fees.'") (quoting *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 565-66 (5th Cir. 2004)); *Danaher Corp. v. Travelers Indem. Co.*, 2015 WL 1647435, at *6 (S.D.N.Y. Apr. 14, 2015) ("Travelers has set forth no plausible reading of the [pre-judgment interest] statute that would lead to the conclusion that the prejudgment interest clock must start when Travelers received each invoice, rather than when each invoice was issued."). "Where, as here, the interest stems from numerous unpaid obligations over a period of time, the court may calculate interest 'from a single reasonable intermediate date.'" *PriMed Pharmaceuticals*, 2024 WL 3842077, at *4 (quoting *Value Wholesale*, 2020 WL 6393016, at *9).

Here, because the invoices that Kimba submits do not list a "due date" for payment, "the court will assume that payments were due 30 days after the date of each invoice (which was generally when the next invoice was issues)." *Value Wholesale Inc.*, 2020 WL 6393016, at *9; *LM Ins. Corp.*, 771 F. Supp. 3d at 209 (assuming payments were due 30 days after the date of

21

each invoice when calculating pre-judgment interest on fees following an insurer's failure to defend the underlying action because "the invoices [did] not provide a due date").

Here, the oldest invoice is dated November 16, 2023 so the Court assumes that the oldest outstanding payment from Fortegra would be due 30 days later, December 16, 2023. (*See* ECF No. 54-9 at p. 1); *LM Ins. Corp.*, 771 F. Supp. 3d at 209 (assuming the "oldest outstanding payment was due" on September 30, 2018 because the "oldest outstanding invoice" was dated August 21, 2018 and did not provide a due date on it). The most recent invoice is dated December 3, 2025 so the Court assumes payment was due 30 days later, January 2, 2026. (*See* ECF No. 54-9 at p. 1); *LM Ins. Corp.*, 771 F. Supp. 3d at 209 (assuming the most recent outstanding payment was due thirty days after the "most recent outstanding invoice" that had no due date). The midpoint between December 16, 2023 and January 2, 2026 is December 24, 2024. Accordingly, the Court will award Kimba pre-judgment interest at a rate of nine percent per annum on the total damages award calculated from December 24, 2024 until the date of entry of judgment. *See Value Wholesale Inc.*, 2020 WL 6393016, at *9.

## VI. <u>Taking Over the Defense</u>

This Court previously granted Kimba's motion for summary judgment on its claim "for a judicial declaration that Fortegra is required to defend and indemnify Kimba on an ongoing basis in connection with the Queens Action." *Kimba*, 2025 WL 2793670, at *11. Since the October 1 Order, Kimba's counsel submits that it has contacted Fortegra's counsel for arrange for Fortegra's assumption of Kimba's defense in the Underlying Action. (ECF No. 54-4, Wagner Decl. at ¶ 22; *see* ECF No. 54-6.) On October 13, 2025, Fortegra's counsel stated that it would "not pick up the defense" because of the anticipated motion practice in the current action. (ECF No. 54-6 at p. 3.) Again, on December 3, 2025, counsel for Kimba emailed counsel for Fortegra

22

regarding Fortegra's assumption of the defense to which Fortegra stated that "maybe" it would "want to take over" Kimba's defense. (*Id.* at p. 2.) As of the date of Kimba's motion for attorneys' fees, Fortegra has not taken over Kimba's defense in the Underlying Action. (ECF No. 54-4, Wagner Decl. at ¶ 22.) Fortegra now posits that Kimba's request to take over the defense is beyond the scope of what this Court ordered on November 25, 2025 Memorandum and Order on Fortegra motion for reconsideration because the November 25, 2025 Memorandum and Order solely directed briefing on the issue of attorneys' fees. (*See* ECF No. 56 at p. 6 ("Kimba's application is also procedurally overbroad.")).

Accordingly, the parties are directed to file letter briefs in accordance with the schedule set forth below on the issue of whether Fortegra, after being found to owe Kimba a duty to defend in the Underlying Action, must subsequently take over Kimba's defense in the Underlying Action following the Court's October 1 Order.

## CONCLUSION

For the foregoing reasons, Kimba's motion for attorneys' fees and costs (ECF No. 54) is **GRANTED** in the amount of: (i) $68,568.00 consisting of $59,475.00 for fees and costs incurred by Kimba in connection with Kimba's defense in the Underlying Action and $9,093.00 for Kimba's retention of the expert; (ii) 8,449.67 in costs; (iii) pre-judgment interest on the total figure, $77,017.67, calculated at 9% per annum from December 24, 2024 to date Judgment is entered. In addition, Kimba shall file its brief on the issue of whether Fortegra is required to take

over Kimba's defense in the Underlying Action on or before **March 19, 2026**. Fortegra's

opposition shall be filed on or before **March 31, 2026**.

Dated:  Central Islip, New York.
        March 5, 2026

                                    **SO ORDERED**,

                                    /S/ *James M. Wicks*

                                    JAMES M. WICKS
                                    United States Magistrate Judge

24